**Anthony S. Petru\*** (CA #91399)
petru@hmnlaw.com
**Gavin Barney** (OR # 163382)
barney@hmnlaw.com
HILDEBRAND MCLEOD & NELSON
250 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
Tel: (510) 451-6732

**James H. Kaster\*** (MN #53946, WI # 1001474)
kaster@nka.com
**Lucas J. Kaster\*** (MN # 396251)
lkaster@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Tel:  (612) 256-3200
*\*pro hac vice motions forthcoming*

Attorneys for Plaintiff Mark Walker

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARK WALKER,<br><br>    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation,<br><br>    Defendant. | Case No.<br><br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiff Mark Walker ("Walker") files this Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages resulting from its violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

1
COMPLAINT FOR DAMAGES

**PRELIMINARY STATEMENT**

1.  Union Pacific enforces a company-wide fitness-for-duty program ("Fitness-for-Duty"), through which the company imposes a blanket policy automatically removing from service employees who disclose or who Union Pacific suspects have certain health conditions. Union Pacific then subjects employees whom it removes from service to a Fitness-for-Duty evaluation. Union Pacific applies this policy regardless of whether the employee has been safely performing the essential functions of their job. Union Pacific evaluations do not assess whether an employee is capable of safely or effectively performing their work.

2.  Employees responsible for train movement must be certified by the Federal Railroad Administration ("FRA"). The FRA allows railroads to certify employees through one of twelve color-vision examinations, including the *Ishihara* test, which consists of a number of colored plates, each containing a circle of dots appearing randomized in color and size, that form a number or shape clearly visible to those without color-vision deficiency, and invisible, or difficult to see, to those who are color-blind or who have color-vision deficiency.[1] Because employees who have color-vision deficiency may nevertheless be able to distinguish between colors, the FRA permits them to be certified through a color-vision field test ("CVFT"). Even employees who the employer deems have not met the employer's requirement to pass a CVFT may be certified and the employee allowed to work when there is reason to believe that they can perform their job's essential functions.

---

[1] Color-vision deficiency is the inability to distinguish certain color shades under normal lighting condition; whereas, color blindness is the inability to see colors. Color-vision deficiency is relatively common, *e.g.*, one in twelve men suffer from red-green color vision deficiency. And unlike color blindness, color-vision deficiency does not prevent its sufferers from performing tasks that require them to distinguish between colors.

3. Because employees responsible for train movement must be certified, Union Pacific's Fitness-for-Duty includes color-vision testing. In or around April of 2016, Union Pacific replaced its CVFT with a new test – the "Light Cannon" test. The old CVFT used existing train signal masts with actual wayside lights and lenses in the field or railyards; whereas the Light Cannon test uses a mobile light device that Union Pacific developed in-house. The Light Cannon test does not replicate what employees see in the field, and yet the majority of those who have been subjected to it fail, despite having successfully passed the old CVFT and performed their jobs without missing a signal for years or even decades.

4. In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern and practice of discrimination under the ADA. *See Quinton Harris et. al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). The *Harris*-plaintiff's allegations "clearly encompass vision testing as it is included in the FFD program." *Harris,* 2019 U.S. Dist. LEXIS 16113, at *10-11 (D. Neb. Feb 1, 2019).

5. Walker is a victim of the same discriminatory Fitness-for-Duty policies and practices alleged in *Harris*. Despite each being qualified and safely performing his job without incident, Walker was removed from service for a Fitness-for-Duty evaluation and excluded from work at Union Pacific on the basis of his real or perceived disability, which regards his ability to see color. Walker was a putative class member in *Harris*, and now timely brings this action.

## JURISDICTION AND VENUE

6. This action arises under the Federal Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* As such, this Court has jurisdiction under 28 U.S.C. § 1331.

7. Venue is proper in the District of Oregon, Portland Division, because a substantial part of the events or omissions that give rise to this lawsuit occurred in the District and Division. 28 U.S.C. § 1391(b)(2); *see also* LR 3-2.

8. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the alleged unlawful practices were committed by Union Pacific in the District of Oregon and because, but for the unlawful practices of Union Pacific, Walker would have worked in the District of Oregon.

## THE PARTIES

9. Walker resides in Creswell, Oregon. Walker is an individual with a disability, as that term is defined under the ADA, who, at all times material to this lawsuit, was employed by Union Pacific in the State of Oregon.

10. Union Pacific is a railroad carrier engaged in interstate commerce.

## PROCEDURAL PREREQUISITES AND TIMELY FILING

11. Walker timely filed a Charge of Discrimination with the EEOC on March 6, 2020. The EEOC issued a determination on May 8, 2022, requiring that Walker file a complaint in court by August 6, 2022.

12. Walker timely brings the present action.

## FACTUAL ALLEGATIONS

### *UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES*

13. Union Pacific's Medical Rules outline its Fitness-for-Duty program. The rules require that certain employees, including all employees in Operating Department field positions (such as Transportation, Engineering Services and Mechanical positions), undergo a Fitness-for-Duty evaluation where they report or Union Pacific suspects that they have one of an enumerated

list of medical and/or physical conditions.

14. When a Fitness-for-Duty evaluation is triggered, the employee is removed from work without pay while Union Pacific Health and Medical Services completes the evaluation and until Union Pacific informs the employee's supervisor that the employee has been cleared to return to work.

15. Union Pacific Fitness-for-Duty includes color-vision testing. Suspected color-vision deficiency triggers a Fitness-for-Duty evaluation.

16. FRA regulation requires that all locomotive engineers and conductors undergo periodic certification. Under the fitness requirement, an engineer or conductor must have the ability to recognize and distinguish between the colors of railroad signals, as demonstrated through one of twelve forms of color-vision examination. Where an employee fails one of the listed examinations, FRA regulations state that an engineer or conductor may nonetheless be certified through a CVFT or where there is otherwise reason to believe that they can recognize and distinguish between colors of railroad signals.

17. Union Pacific utilizes the 14-Plate Ishihara test to test for color-vision deficiency for FRA certification. When an employee fails the Ishihara test, Union Pacific subjects the employee, as part of the Fitness-for-Duty process, to a CVFT implemented in or around April 2016, called the Light Cannon test.

18. The Light Cannon Test does not simulate real world conditions and does not assess the employee's ability to recognize and distinguish between colors of railroad signals.

19. As a result of the conduct described above, Union Pacific employees who have never had a problem performing the essential functions of their jobs have been removed from work without pay either for an extended period or indefinitely.

## *PLAINTIFF MARK WALKER*

20. Walker was hired into train service by Union Pacific in Oregon in 2004, and worked as a locomotive engineer from approximately May 2005 until June 2019 when he was removed from service.

21. As an engineer, part of Walker's job entailed reading and interpreting multicolored railroad traffic signal lights on signal masts. Walker safely worked as an engineer for over fourteen years without misreading the color of a signal.

22. In or around 2004 Union Pacific administered Walker an Ishihara color vision test. Walker passed the Ishihara test and was allowed to work in train service.

23. Between 2005 and 2019, Walker underwent FRA engineer certification approximately five times and was assessed by Union Pacific with the Ishihara test on each occasion. Walker was adjudged to have failed the Ishihara test on two occasions, in 2010 and 2013. After each failed Ishihara test, Walker took and passed a previous Union Pacific CVFT in which Walker read and relayed a series of signals from a real railroad signal mast to assess his ability to read and interpret signals in the field.

24. On or about June 21, 2019, Walker attempted to recertify as an engineer. He took and passed the Ishihara Test, correctly identifying all fourteen color plates. However, because Walker had previously failed the Ishihara test in 2013, Union Pacific determined that he was required to undergo a CVFT as part of a Fitness-for-Duty evaluation. Union Pacific removed Walker from work as an engineer.

25. On or about July 8, 2019, as part of the Fitness-for-Duty process, Union Pacific sent Walker to a railyard in Portland, Oregon, for a field test. There, Union Pacific administered the Light Cannon test instead of the previous CVFT. Union Pacific concluded that Walker failed

the Light Cannon test.

26. On or about August 21, 2019, Union Pacific issued Walker permanent work restrictions prohibiting him from working in any position requiring accurate identification of colored railroad wayside signals, including as an engineer. Union Pacific claimed that these restrictions could not be accommodated.

27. In the time since removing him from service, Union Pacific has persisted in its refusal to allow Walker to return to his job as an engineer. At all times, Walker was capable of performing the essential functions of his job, and he remains able to perform them today.

28. On information and belief, Union Pacific had and/or has one or more open jobs in which Walker could be returned to work despite the permanent work restrictions issued by Union Pacific.

29. To the extent that Walker needed a reasonable accommodation, Union Pacific failed to provide them, and failed to even engage in an interactive process regarding what accommodations were possible.

## CAUSES OF ACTION

### COUNT I
### *VIOLATION OF THE ADA*
### *DISABILITY DISCRIMINATION – DISPARATE TREATMENT*

30. Plaintiff incorporates the foregoing paragraphs by reference.

31. The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). An individual is regarded as having such an impairment if they are subjected to an action prohibited under the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(C).

32. At all relevant times, Union Pacific regarded Walker as having an impairment and, therefore, Walker was an individual with a disability under the ADA.

33. At all relevant times, Walker had the requisite skill, experience, education, and other job-related requirements of his positions, and was therefore a qualified individual under the ADA.

34. At all relevant times, Walker could perform the essential functions of his position, with or without reasonable accommodation.

35. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

36. Discriminating against a qualified individual on the basis of disability under Section 12112(a) includes, among other things, "using qualification standards, employment tests or other selection criteria that screen out . . . an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

37. Union Pacific discriminated against Walker on the basis of a real or perceived disability in one or more of the following ways:

   a. Removing Walker from service and issuing work restrictions on the basis of his disability;

   b. Failing to utilize alternate clinical tests to the Ishihara Test to determine whether Walker can effectively read and interpret railroad signals;

   c. Using a field test that does not assess whether Walker can effectively read and

      interpret railroad signals;

    d. Subjecting Walker to a Color Vision Field Test despite him passing the Ishihara color vision test;

    e. Failing to otherwise assess whether Walker is capable of reading and interpreting railroad signals; and

    f. Using a Fitness-for-Duty evaluation process that screens out qualified individuals with disabilities.

38. Because Union Pacific violated 42 U.S.C. § 12112, Walker has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Walker is also entitled to attorneys' fees and costs incurred in connection with these claims.

39. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Walker's rights and safety. As a result, Walker is entitled to punitive damages.

### COUNT II
### *VIOLATION OF THE ADA*
### *DISABILITY DISCRIMINATION – DISPARATE IMPACT*

40. Plaintiff incorporates the foregoing paragraphs by reference.

41. Walker is a qualified individual with a disability within the meaning of the ADA.

42. Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]" 42 U.S.C. § 12112(b)(6).

43. Discriminating against a qualified individual on the basis of disability also includes "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability." 42 U.S.C. § 12112(b)(3).

44. Union Pacific discriminated against Walker on the basis of disability in one or more of the following ways:

   a. Union Pacific's Fitness-for-Duty policies, including its use of the Light Cannon test, disproportionately and adversely impact qualified individuals with disabilities;

   b. Union Pacific uses qualification standards that screen out or tend to screen out qualified individuals with disabilities; and

   c. Union Pacific uses a Fitness-for-Duty evaluation process that screens out or tends to screen out qualified individuals with disabilities.

45. Union Pacific cannot show that such qualifications standards are job-related and consistent with business necessity.

46. Because Union Pacific violated 42 U.S.C. § 12112, Walker has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Walker is also entitled to attorneys' fees and costs incurred in connection with these claims.

47. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Walker's rights and safety. As a result, Walker is entitled to punitive damages.

## COUNT III
### *VIOLATION OF THE ADA*
### *FAILURE TO ACCOMMODATE*

48. Plaintiff incorporates the foregoing paragraphs by reference.

49. Walker is a qualified individual with a disability within the meaning of the ADA.

50. Discriminating against a qualified individual with a disability includes "not making reasonable accommodations to the known physical or mental limitations of the otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

51. Union Pacific discriminated against Walker by failing to provide Walker with reasonable accommodation.

52. Because Union Pacific violated 42 U.S.C. § 12112, Walker has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Plaintiff is also entitled to attorneys' fees and costs incurred in connection with these claims.

53. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Walker's rights and safety. As a result, Walker is entitled to punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE, Plaintiffs pray for judgment against Union Pacific as follows:**

1. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

2. An injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional

distress, and other compensatory damages in excess of $75,000.00;

4. Pre-judgment interest, as provided by law;

5. For Plaintiff's costs, disbursements and attorneys' fees pursuant to law;

6. For an award of punitive damages;

7. For all relief available under the ADA;

8. For such other and further relief available by statute; and

9. For such other and further relief as the Court deems just and equitable.

Date:  July 12, 2022  

s/ *Gavin S. Barney*
**HILDEBRAND MCLEOD & NELSON**
**Anthony S Petru,** *pro hac vice forthcoming*
petru@hmnlaw.com
**Gavin Barney** (OR # 163382)
Email: barney@hmnlaw.com
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
Tel: (510) 451-6732

**NICHOLS KASTER, PLLP**
**James H. Kaster**, *pro hac vice forthcoming*
Email: kaster@nka.com
**Lucas J. Kaster,** *pro hac vice forthcoming*
Email: lkaster@nka.com
80 South Eighth Street
4700 IDS Center
Minneapolis, Minnesota 55402-2242
Tel: (612) 256-3200

*Attorneys for Plaintiff Mark Walker*